James C. Shah
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
475 White Horse Pike
Collingswood, NJ  08107
Tel.:  (856) 858-1770
Fax:  (866) 300-7367
Email:  jshah@sfmslaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RANDY BRYANT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., D/B/A SPECTRUM,<br><br>DEFENDANT. | CASE NO. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff, Randy Bryant ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters:

**NATURE OF ACTION**

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Charter Communications, Inc. ("Defendant"), doing business as "Spectrum," in negligently, knowingly, or willfully transmitting unsolicited, autodialed text messages, *en masse*, to Plaintiff's cellular telephone and the cellular telephones of thousands of other individuals across the country, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this putative class action lawsuit pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this District because Defendant conducts business in this District, Defendant maintains offices in this District, and because a substantial part of the events concerning the conduct at issue occurred in this District, as the unauthorized automated text message advertisements received by Plaintiff and other putative class (defined below) members were transmitted by Defendant's agent or affiliate located in this District, and originated from this District.

## PARTIES

4. Plaintiff is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident of Fayetteville, North Carolina.

5. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39). Defendant maintains its corporate headquarters in Stamford, Connecticut, and is a nationwide provider of cable television, internet, and telephone services.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing," as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party before initiating such calls or texts via an autodialer.

7. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because receiving them is a greater nuisance and invasion of privacy than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

8. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services," or "SMS," which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service, called "Multimedia Messaging Services," or "MMS," is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. As one study has reported, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[1]

9. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS and MMS text messages are received virtually anywhere in the world.

10. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited May 1, 2018).

service providers, either for each text message they receive, or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

11.     Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12.     Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (843) ***-0892 (the "0892 Number").  The 0892 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

13.     Plaintiff is not and never has been a customer of Defendant or a subscriber of Defendant's services.  Plaintiff has never provided the 0892 Number to Defendant.

14.     On or about February 5, 2018 and February 7, 2018, Defendant transmitted, or caused to be transmitted, by itself or through an intermediary or intermediaries, two SMS or MMS text message advertisements to the 0892 Number without Plaintiff's prior express consent, written or otherwise.  The text messages sent by Defendant to the 0892 Number are depicted in the following screenshot taken from Plaintiff's cellular device:



15.     The source of the SMS or MMS text messages sent by Defendant to the 0892 Number was (410) 305-6291, which is a telephone number leased by Defendant or its agent(s) or affiliate(s) from Aerialink LLC, operated and maintained by Defendant or its agent(s) or affiliate(s), and used by Defendant or its agent(s) or affiliate(s) for operating Defendant's text message marketing program and for its sales representatives to receive incoming telephone calls from prospective customers.

16.     Because Plaintiff is alerted by his cellular device, by auditory or visual means, whenever he receives an SMS or MMS text message, each unsolicited SMS or MMS text message that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy and intruded upon his seclusion upon receipt. Plaintiff became distracted and aggravated as a result of receiving each of Defendant's unsolicited SMS or MMS text messages.

5

17. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 0892 Number occurred via an "automated telephone dialing system," as defined by 47 U.S.C. § 227(b)(1)(A).

18. Specifically, Defendant utilized an "automated telephone dialing system" because the dialing equipment used by Defendant to transmit SMS or MMS text messages to the 0892 Number includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention. And in fact, Defendant actually transmitted, or caused to be transmitted, the text messages at issue in this case to Plaintiff and all other putative class members in an automated fashion and without human intervention, with hardware and software that stores, produces and dials random or sequential numbers.

19. The complained of text messages to the 0892 Number constitute telephone solicitations as defined by 47 U.S.C. § 227(a)(4) and/or advertisements as defined by 47 C.F.R. 64.1200(f)(1).

20. Plaintiff never provided his "prior express written consent" or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant to call or transmit text messages to the 0892 Number by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

21. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The class ("Class") which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons in the United States who, at any time between May 7, 2014 and the present, received one or more SMS or MMS text message(s) from Charter Communications, Inc. or an affiliate, subsidiary, or agent of Charter Communications, Inc. and who did not provide prior express written consent to receive such SMS or MMS text message(s).

22. Defendant and its employees and agents are excluded from the Class, as well as the Judge to which this case is assigned.

23. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

24. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

25. This class action Complaint seeks injunctive relief and monetary damages.

26. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

27. <u>Numerosity</u>. The number of persons within the Class is substantial and is believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.

Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

28.     <u>Typicality</u>. Plaintiff received at least one text message through the use of an automatic telephone dialing system, without providing his prior express written consent to Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interest is consistent with and not antagonistic to those of the other Class members he seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

29.     <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Complaint to add additional Class representatives or assert additional claims.

30.     <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other data privacy and consumer protection statutes.

31.     <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not

vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

    a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

    b) Whether such text messages were sent using an "automatic telephone dialing system";

    c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

    d) Whether the complained of conduct was knowing or willful; and

    e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

    32.   <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources

of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

33. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such non-party Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

34. Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENT VIOLATION OF THE
### TELEPHONECONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

35. Plaintiff incorporates by reference the above paragraphs this class action Complaint as if fully stated herein.

36. The foregoing acts and omissions constitute negligent violations of the TCPA by Defendant, including, but not limited to, violations of each of the above-cited provisions of 47 U.S.C. § 227.

37. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do, seek injunctive relief prohibiting such conduct violating the TCPA in the future.

38. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

39. Plaintiff and Class members also seek an award of attorneys' fees and costs.

### COUNT II
### KNOWING AND/OR WILLFUL VIOLATION OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

40. Plaintiff incorporates by reference the above paragraphs of this class action Complaint as if fully stated herein.

41. The foregoing acts and omissions by Defendant constitute knowing or willful violations of the TCPA, including, but not limited, to violations of each of the above-cited provisions of 47 U.S.C. § 227.

42. As a result of alleged knowing or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do, seek, injunctive relief prohibiting such future conduct violating the TCPA.

43. As a result of Defendant's knowing or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do, seek treble damages of up to $1,500.00 for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

44. Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment in his favor, as follows:

A. Injunctive relief prohibiting such violations of the TCPA in the future;

B. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages for each and every text message that violated the TCPA;

C. As a result of the alleged willful or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each class member treble damages, as provided by the statute, of up to $1,500.00 for each and every text message that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

E. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  May 8, 2018                                Respectfully submitted,

**SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP**


By:   s/James C. Shah
475 White Horse Pike
Collingswood, NJ   08107
Tel.:  (856) 858-1770
Fax:  (866) 300-7367
Email:  jshah@sfmslaw.com


Frank S. Hedin*
David W. Hall*
**HEDIN HALL LLP**
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Tel: (415) 766-3534
Fax: (415) 402-0058
Email: fhedin@hedinhall.com
           dhall@hedinhall.com

* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiff and the Putative Class*